**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&G Closed Circuit Events LLC, | No. CV-19-05142-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Paul Williams, et al., | |
| Defendants. | |

G&G Closed Circuit Events LLC ("G&G") held the exclusive nationwide commercial distribution rights to the September 15, 2018 boxing match between Canelo Alvarez and Gennady "GGG" Golovkin ("the Program"). In this lawsuit, G&G alleges that Paul Williams ("Williams") intercepted the Program and displayed it at his Phoenix restaurant, Smoke Dem Bones BBQ ("Smoke Dem Bones"), without permission. Although Williams was served with the complaint, he never answered or otherwise responded. Accordingly, G&G has now filed a motion for default judgment seeking an award of statutory damages of $33,400. For the following reasons, G&G's motion will be granted in part and denied in part. The Court will award statutory damages of $8,500.

**BACKGROUND**

I. Underlying Facts

The following facts are derived from G&G's complaint (Doc. 1), from the materials attached to G&G's motion for default judgment (Docs. 15-2, 15-3), and from the additional materials that G&G submitted after it filed its motion for default judgment (Doc. 18).

In or around June 2018, G&G obtained the exclusive nationwide commercial distribution rights to the Program. (Doc. 1 ¶ 16; Doc. 18 at 9-21.) Afterward, G&G entered into an array of sublicensing agreements under which individual hotels, bars, restaurants, and other commercial establishments would pay to obtain the right to exhibit the Program within their confines. (Doc. 1 ¶ 17.) The cost of a sublicense was dependent on the seating capacity of the establishment. (Doc. 18 at 23.) The lowest possible cost—and the cost that would have been applicable had Smoke Dem Bones entered into a sublicense agreement—was $2,800. (*Id.* at 3 ¶ 8, 23.)

Williams is the managing member of Smoke Dem Bones. (Doc. 1 ¶ 12.) Williams is also identified as the "principal" of Smoke Dem Bones in the company's filings with the Arizona Secretary of State (Doc. 15-2 at 6) and was, at all relevant times, the sole member of the LLC that controls Smoke Dem Bones (Doc. 15-2 at 9-17). Thus, Williams "has an obvious and direct financial interest in the activities of Smoke Dem Bones." (Doc. 1 ¶ 12.)

Smoke Dem Bones did not obtain a sublicense from G&G to display the Program. (Doc. 18 at 2 ¶ 3.) Nevertheless, on September 15, 2018, Williams "directed or permitted the employees of Smoke Dem Bones BBQ to unlawfully intercept and broadcast [the] Program at Smoke Dem Bones BBQ, or intentionally intercepted, and or published the Program at Smoke Dem Bones BBQ himself." (Doc. 1 ¶ 11.) Because G&G employs encryption technology, this interception could not have been accidental. (Doc. 18 at 3-4 ¶¶ 9-10.)

Inside Smoke Dem Bones, the Program was displayed on a 50" television set. (Doc. 15-3 at 3.)[1] Additionally, "directly in front of the establishment was a handprinted white sandwich board advertising the fight." (*Id.*) An investigator employed by G&G observed only three patrons inside Smoke Dem Bones while the Program was being displayed. (*Id.*) Smoke Dem Bones did not impose a cover charge for patrons to enter. (*Id.*)

---

[1] Although G&G asserts in its moving papers that "the program was shown throughout Smoke Dem Bones BBQ on two 50" televisions" (Doc. 15 at 11), the affidavit from G&G's investigator states that, although there were two 50" sets within the establishment, she only observed the Program being displayed on one of them: "The TV on the N[orth] wall." (Doc. 15-3 at 3).

II.   Procedural History

On September 11, 2019, G&G initiated this action by filing a complaint. (Doc. 1.)[2]

On October 17, 2019, G&G timely served Williams. (Doc. 11.)

On December 23, 2019, G&G applied for entry of default against Williams. (Doc. 10.)

On January 21, 2020, the Clerk entered the requested default. (Doc. 11.)

On April 9, 2020, the Court issued an order to show cause why the case should not be dismissed due to G&G's failure to prosecute. (Doc. 12.)

On April 20, 2020, G&G responded to the order to show cause by confirming that it remained interested in prosecuting. (Doc. 16.)

On April 20, 2020, G&G also filed its motion for default judgment. (Doc. 15.)

On April 28, 2020, G&G filed additional material in support of its motion. (Doc. 18.)

**ANALYSIS**

I.   Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which

---

[2] Although the complaint named two defendants—Williams and the LLC that operates Smoke Dem Bones (*id.* ¶¶ 7-8), G&G subsequently agreed to dismiss the LLC as a party (Doc. 14). Thus, Williams is the sole remaining defendant.

are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II.     The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If G&G's motion were denied, it would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Williams's failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020).

III.    The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, G&G seeks a total of $33,400 in statutory damages, plus attorneys' fees and costs in an amount to be determined following entry of judgment. (Doc. 15-4 at 2.)

G&G claim's for statutory damages arises under 47 U.S.C. § 605.[3]  G&G invokes

---

[3] Although the complaint asserts two causes of action, one arising under 47 U.S.C. § 605 and the other arising under 47 U.S.C. § 553 (Doc. 1 ¶¶ 15-29), G&G clarified in its

- 4 -

two different portions of that statute.  First, G&G seeks $8,400 in statutory damages under subsection (e)(3)(C)(i)(II), which provides in relevant part that "the party aggrieved may recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just."  *Id.*  Second, G&G seeks an additional $25,000 in statutory damages under subsection 605(e)(3)(c)(ii).  That provision, which applies "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," provides that "the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation."  *Id.*

As the statutory language makes clear, the Court possesses wide discretion in determining the amount of statutory damages to award in this case.  Where the Court has the discretion to reduce a monetary award to a less substantial sum, the fourth *Eitel* factor becomes neutral.  *Twitch Interactive, Inc. v. Johnson*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

IV.     The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint.  "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id.*

Here, both factors weigh in favor of granting default judgment.  Taken as true, the factual allegations in the complaint establish that Williams engaged in unlawful piracy in violation of 47 U.S.C. § 605(a), that the violation was willful and for purposes of direct or indirect commercial advantage or private financial gain, that Williams had the right and ability to supervise the infringing activities, and that Williams had an obvious and direct financial interest in those activities.  G&G has prevailed in other lawsuits in this District

---

moving papers that it is only seeking damages pursuant to its § 605 claim (Doc. 15-1 at 8).

upon similar showings. *See, e.g., G&G Closed Circuit Events, LLC v. Alexander*, 2020 WL 1904628, *2-3 (D. Ariz. 2020) (granting summary judgment to G&G on § 605 claim against Phoenix restaurant and certain supervisors for displaying the Program without paying the sublicense fee).

V. Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate. *See also G&G Closed Circuit Events, LLC v. Ortiz*, 2020 WL 1244492 (D. Ariz. 2020) (granting default judgment to G&G in similar lawsuit involving unauthorized display of the Program); *G&G Closed Circuit Events, LLC v. Venegas Alcantra*, 2020 WL 1047058 (D. Ariz. 2020) (same); *G&G Closed Circuit Events, LLC v. Espinoza*, 2020 WL 377095 (D. Ariz. 2020) (same).

VI. Damages

G&G seeks a total of $33,400 in statutory damages, a sum it argues is necessary to "compensat[e] Plaintiff and act[] as a deterrent against future acts of piracy by both these Defendant and others." (Doc. 15-1 at 14-20.) Among other things, G&G notes that the cost of the stolen programming was $2,800 and that Williams's decision to engage in exterior advertising (via the sandwich board outside Smoke Dem Bones) is a "particularly important" factor supporting a large award. (*Id.*)

As noted, 47 U.S.C. § 605 affords the Court wide discretion in calculating the size of the statutory damage award in this case. Williams's violation of the statute triggers an award of "not less than $1,000 or more than $10,000, as the court considers just," and because the violation was willful and for purposes of direct or indirect commercial advantage or private financial gain, the Court "in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation." *Id.* §§ 605(e)(3)(C)(i)(II), (C)(ii).

The Ninth Circuit has stated that, when calculating statutory damage awards under § 605 based upon the illegal interception and display of pay-per-view boxing matches, district courts should attempt to impose "a sanction that deters but does not destroy."

- 6 -

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). Thus, in *Kingvision*, the Ninth Circuit held that the district court did not abuse its discretion in concluding that the plaintiff's request for an $80,400 statutory damage award "was far too high" in light of the facts that the stolen programming would have cost "between $3,000 and $6,000" and "a high five figure judgment" may have "put[] [the] bar out of business." *Id.*

Here, on the one hand, the award against Williams must be substantially more than $2,800. G&G deserves to be compensated for the value of the stolen material and considerations of deterrence require the penalty for theft to be much higher than the cost of the stolen material. On the other hand, the Court is not persuaded that an award of $33,400—which is nearly 12 times the cost of the stolen material—is reasonable.

In the last year, G&G has obtained default judgments against three other Arizona-based businesses and business owners for illegally intercepting and displaying the Program. In each case, G&G requested a large statutory damage award but the Court declined to impose the requested amount. For example, in *Ortiz*, 2020 WL 1244492, G&G argued (just as it argues here) that "the Court should triple the licensing fee to $8,400 and enhance it upwards by $25,000 for a total damage award of $33,400." *Id.* at *2-4. The court disagreed and awarded only $5,600, emphasizing that "Defendant's alleged commercial operation is extremely small," "Defendant did not engage in promotional advertising, or charge a premium for . . . food or drinks," and "Defendant was not a repeat offender." *Id.* Similarly, in *Espinoza*, 2020 WL 377095, G&G requested "a total award of $32,500" but the court awarded only $8,500 because, *inter alia*, the restaurant did not impose a cover charge, did not charge a premium for food or drinks, was not filled to capacity, and had no history of violations. *Id.* at *3-4. Finally, in *Venegas Alcantra*, 2020 WL 1047058—which involved a restaurant that advertised the availability of the Program on Facebook and end up attracting 45 patrons—G&G requested an award of $40,000 but the court awarded $30,000. *Id.* at *3.

This case most closely resembles *Espinoza*. Although Williams engaged in

- 7 -

promotional advertising outside Smoke Dem Bones, the advertising apparently wasn't very successful—G&G's investigator only saw three other customers inside the establishment. Additionally, this case doesn't involve a cover charge, increased food and drink prices, or a history of violations. Thus, the Court concludes, in its discretion, that a statutory damage award of $8,500 is best calibrated to deter but not destroy. *Kingvision,* 168 F.3d at 350. Moreover, G&G has retained the right to file a post-judgment motion for attorneys' fees, which, if granted, will have a further deterrent and compensatory effect. *Cf. G&G Closed Circuit Events, LLC v. Espinoza*, 2020 WL 1703630 (D. Ariz. 2020) (awarding $3,250 in attorneys' fees to G&G's counsel in case where G&G also obtained a default judgment awarding $8,500 in statutory damages).[4]

Accordingly,

**IT IS ORDERED** that G&G's motion for default judgment (Doc. 15) is **granted in part and denied in part**. A separate judgment will issue, after which the Clerk of Court shall terminate this action.

Dated this 16th day of June, 2020.

Dominic W. Lanza
United States District Judge

---

[4] If G&G files a motion for attorneys' fees, "[t]he Court [will be] constrained to review [counsel's] bill with something of a jaundiced eye because of his well-known use of boilerplate pleadings and form motions in the many hundreds of actions similar to this one that he maintains across the country." *Espinoza*, 2020 WL 1703630 at *2. Additionally, any motion for attorneys' fees shall be accompanied by an electronic Microsoft Excel spreadsheet, to be emailed to the Court, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its motion.