1    **WO**

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7             **FOR THE DISTRICT OF ARIZONA**

8

9    G&G Closed Circuit Events LLC,        |   No. CV-19-05142-PHX-DWL

10             Plaintiff,                  |   **ORDER**

11   v.

12   Paul Williams, et al.,

13             Defendants.

14

15         Pending before the Court is Plaintiff G&G Closed Circuit Events LLC's ("G&G")

16   motion for $4,916 in attorneys' fees and $650 in non-taxable costs.  (Doc. 21.)  For the

17   following reasons, the request for attorneys' fees will be granted in part, with the award

18   reduced to $4,206, and the request for non-taxable costs will be granted in full.

19                         **BACKGROUND**

20         On September 11, 2019, G&G initiated this action by filing a complaint.  (Doc. 1.)

21   In a nutshell, the complaint alleges that G&G held the exclusive nationwide commercial

22   distribution rights to the September 15, 2018 boxing match between Canelo Alvarez and

23   Gennady "GGG" Golovkin ("the Program") and that Defendant Paul Williams

24   ("Williams") violated 47 U.S.C. § 605(a) by intercepting the Program and displaying it at

25   his Phoenix restaurant, Smoke Dem Bones BBQ, without permission.  (*Id.*)

26         On October 17, 2019, G&G timely served Williams.  (Doc. 8.)

27         On December 23, 2019, G&G applied for entry of default against Williams.  (Doc.

28   10.)

1          On January 21, 2020, the Clerk entered the requested default.  (Doc. 11.)

2          On April 20, 2020, G&G filed a motion for default judgment.  (Doc. 15.)  The

3    motion sought an award of statutory damages of $33,400.  (*Id.* at 3.)  Williams did not

4    respond.

5          On June 16, 2020, the Court granted G&G's motion in part, concluding that G&G

6    was entitled to default judgment but its request for $33,400 in statutory damages was

7    excessive because (1) the requested amount was "nearly 12 times the cost of the stolen

8    material," (2) several other Arizona courts had rejected G&G's requests for similar awards

9    in similar cases, and (3) "G&G has retained the right to file a post-judgment motion for

10   attorneys' fees, which, if granted, will have a further deterrent and compensatory effect."

11   (Doc. 19 at 6-8.)  Thus, the Court held that "a statutory damage award of $8,500 is best

12   calibrated to deter but not destroy."  (*Id.*)  Finally, the Court included a footnote specifically

13   advising G&G that, should it file a separate motion for attorneys' fees, it should avoid

14   making boilerplate claims and submit an itemized Excel spreadsheet to chambers.  (*Id.* at

15   8 n.4.)

16         On June 29, 2020, G&G filed the pending motion for attorneys' fees and non-

17   taxable costs.  (Doc. 21.)  G&G also provided the required spreadsheet.  Williams did not

18   respond.

19                                    **DISCUSSION**

20         Because G&G prevailed on its underlying claim under 47 U.S.C. § 605(a), it is

21   entitled to "the recovery of full costs, including . . . reasonable attorneys' fees."  47 U.S.C.

22   § 605(e)(3)(B)(iii).

23         In *G&G Closed Circuit Events LLC v. Espinoza*, 2020 WL 1703630 (D. Ariz. 2020),

24   a case in which G&G also obtained an $8,500 default judgment against a Phoenix

25   restaurant that unlawfully intercepted the Program, G&G submitted a post-judgment

26   request for $10,974.90 in attorneys' fees and an unspecified amount of investigative

27   expenses.  *Id.* at *1.  As for the fee request, the *Espinoza* court concluded it was

28   unreasonable because (1) it included $1,100 in fees related to "travel time" without

1   providing a sufficient explanation for the nature of those time entries, (2) it included time

2   entries for purely clerical work that appeared duplicative of work performed by G&G

3   counsel's assistant, (3) some entries pertaining to legal research and drafting were

4   excessive, given that G&G's counsel files essentially the same "boilerplate" motions and

5   pleadings in other cases, and (4) G&G's counsel failed to establish that his hourly rate of

6   $550 and his research attorney's hourly rate of $300 were reasonable. *Id.* at *1-4. Given

7   those determinations, the court reduced the fee award to $3,285. *Id.* at *4. Finally, as for

8   investigative expenses, the court declined to make any award because G&G failed to

9   submit evidence establishing its investigator's credentials and appeared to submit the

10  wrong invoice, which pertained to a different case. *Id.*

11         Here, G&G has corrected many of these issues. Its fee request of $4,916 is less than

12  half of what it requested in *Espinoza* and the associated time entries (Doc. 21-2 at 8-11) do

13  not include any travel time. Additionally, although there are a few instances where G&G's

14  counsel and counsel's support staff worked on the same matter, these appear to be

15  appropriate uses of time where the support staff member (who charges a lower hourly rate

16  than counsel) initially researched and drafted a particular matter and counsel then spent an

17  equal or lesser amount of time reviewing the support staff member's work.

18         In general, the Court is also satisfied that the time entries do not include excessive

19  amounts of time spent on boilerplate tasks. The two exceptions are (1) the request for 1.0

20  hours of time for counsel's administrative assistant to prepare a *pro hac vice* application

21  (total cost: $110) and (2) the request for 2.0 hours of time for counsel's research assistant

22  to prepare the attorneys' fee motion (total cost $600). The former is excessive because

23  counsel presumably prepares and files the exact same *pro hac vice* application in every one

24  of these cases. The latter is excessive because (1) the fee motion here appears very similar,

25  if not identical, to the fee motions routinely filed by counsel in other G&G cases and (2)

26  G&G is seeking reimbursement for duplicative time (that of counsel's administrative

27  assistant and counsel himself) spent on the fee motion. Thus, those two entries will be

28  stricken.

1    Finally, as for the hourly rates charged by counsel and his support staff (which range

2    from $110 to $550), judges in this and other districts have reached divergent opinions on

3    whether they are reasonable.  This Court is satisfied they are reasonable, particularly

4    because this fee request includes only 2.7 hours of time billed by counsel at the $550 rate.

5    Accordingly, the Court will reduce the fee request to $4,206 and concludes the reduced

6    sum is reasonable.

7    G&G also requests $650 in non-taxable costs—specifically, the cost of hiring an

8    investigator.[1]  The threshold issue raised by this request is whether investigative costs are

9    ever recoverable, given that investigative costs are not one of the enumerated categories of

10   taxable costs set forth in 28 U.S.C. § 1920.  Several courts have concluded that, because

11   the anti-piracy statute specifically authorizes the recovery of "full costs," it should be

12   interpreted as authorizing the recovery of additional categories of costs—including

13   investigative costs—beyond those specified in the taxable-costs statute.  *See, e.g., G&G*

14   *Closed Circuit Events, LLC v. Ruiz*, 2019 WL 5268656, *3 (S.D. Cal. 2019) ("47 U.S.C. §

15   605 instructs that the court 'shall direct the recovery of full costs . . . .'  For this language

16   to have any meaning it must include costs that go beyond those to which Plaintiff would

17   be entitled as the prevailing party in the absence of this provision."); *Kingvision Pay-Per-*

18   *View Ltd. v. Autar*, 426 F. Supp. 2d 59, 66-67 (E.D.N.Y. 2006) ("While the term, 'full

19   costs,' is not defined in the statute, . . . the plain meaning of the statutory language . . .

20   suggest[s] that this term was intended to include expenses other than 'taxable costs' . . . .

21   [T]he 'full costs' permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the

22   'taxable costs' recoverable under 28 U.S.C. § 1920.").  This Court agrees.  To hold

23   otherwise would be to conclude that Congress's decision to authorize the recovery of "full"

24   costs in 47 U.S.C. § 605, when the traditional categories of taxable costs would have

25   remained available in the absence of such authorization, had no meaning and accomplished

26   nothing.  *See, e.g., Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017)

27

28   [1]    G&G's request for taxable costs is set forth in its bill of costs (Doc. 22), which the Clerk of Court will address by separate order.  *See* LRCiv 54.1(b).

- 4 -

("[U]sually . . . when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.").

The Court is also satisfied that G&G has submitted sufficient evidence to support its request for $650 in investigative costs.  Unlike in *Espinoza*, here G&G has submitted the correct invoice pertaining to the correct defendant. (Doc. 21-2 at 14.)  And, as discussed in the order granting G&G's motion for default judgment, these costs arose because G&G hired an investigator to travel to Williams's restaurant on the night of the Program and take pictures to prove that piracy was occurring (and that Williams was advertising the availability of the Program on the restaurant's exterior signage).  (Doc. 19 at 2.)  Such investigate efforts were thus appropriate and necessary to prove G&G's claim.

Accordingly,

**IT IS ORDERED** that G&G's motion for attorneys' fees and non-taxable costs (Doc. 21) is **granted in part and denied in part**.  G&G is awarded a total of **$4,856**, consisting of $4,206 in attorneys' fees and $650 in non-taxable costs.

Dated this 4th day of August, 2020.

Dominic W. Lanza
United States District Judge